McARTHUR *v.* CAMPBELL, COUNTY JUDGE.

5-747                                               280 S. W. 2d 219

Opinion delivered June 13, 1955.

*S. Hubert Mayes,* for appellant.

*Frank Holt* and *Mehaffy, Smith & Williams,* for appellee.

LEE SEAMSTER, Chief Justice. The appellant, a citizen of Pulaski County, has appealed this case from a judgment of the Chancery Court of the County sustaining a demurrer and dismissing a complaint filed by him in said court, against the appellee the County Judge of said County.

On February 4, 1955, the Pulaski County Court entered an order declaring the necessity for the construction of a county jail, for the handling, detention and rehabilitation of juveniles in said county. The court appointed architects who prepared and filed plans for the jail and estimated the cost thereof at $386,000.

The complaint sets out the above facts and alleges that unless the appellee is enjoined he will proceed to call an election to see if the voters of the county will approve the proposed project and vote a tax to pay for the same. He further alleges that the county court is proceeding under the provisions of Amendment No. 17 to the Constitution of this State and that such amendment does not authorize the construction of such a building as proposed in the order; that the order is void and appellee has spent and is preparing to spend county funds illegally in carrying out the order so made by the county court.

Amendment No. 17 provides the only method by which a county without current funds, can construct a county jail. It's admitted by both parties that the county is without current funds to construct the building.

The principal contention of the appellant is that the proposed building is not a county jail because it is proposed to house therein delinquent juveniles, dependent juveniles and the juvenile court administration together with other personnel. Amendment No. 17 makes it the business of the County Court to determine in the first place, the necessity for the construction of a county jail, before it can proceed with the construction of the building the voters of the county have to approve, by their vote, the construction thereof and vote for a tax to pay therefor. The law prohibits the placing of juveniles with adult prisoners.

It is conceded that the county does not now have a suitable place for the detention of juveniles. The purpose to be served by the proposed building is a proper function of the county government. It is generally known that a county jail is a building where a person or persons may be legally detained for many different reasons, for investigation and observation to answer a charge of some offense, to serve out a fine, to await transfer to another state, or another prison and for many other reasons.

The jail buildings generally provide a place for the jailer, and other personnel to live, a place to prepare

meals, and sanitary conditions are maintained therein. The proposed building according to the plans will provide separate facilities for the juvenile court, the duties of such court are more administrative than judicial. It also provides a place to keep the administrative records and conference rooms; separate compartments for dependent children such as sleeping, and eating quarters and other facilities. The plans also provide for delinquent juveniles the same facilities on another floor level so that such children will not be housed together but kept separate as provided by law. No child will be detained in said building except for legal cause, just the same as in any county jail. They will be detained for processing in a legal manner, the dependent children will have shelter, food and clothing until suitable homes can be found for the homeless. For those who have homes until their homes can be improved and a proper home life provided for them. The delinquent children, whether because they are incorrigible or law violators will be held in the building on a separate floor from any other department in the building until arrangement can be made with their parents, other relatives, or some suitable person or persons to provide for them a normal home life where they may have an opportunity to become useful citizens.

Our law requires that juveniles be kept separate from adult prisoners. The County Court found that the County now has no separate facilities for the care of juveniles. Amendment No. 17 authorizes the construction, reconstruction or extension of county jails. The contention of the appellant is that the proposed building is not a county jail. Webster's Dictionary defines a jail (among other definitions) "as a building for the confinement of persons held in lawful custody." A county jail, whether for adults or juveniles, in the common acceptation of the term, is a place for the legal detention of all persons, who come within the provisions of our laws which authorizes our law enforcement officers to detain them. Many persons, who are not criminals, are taken by officers to the jail. They may never be charged with any offense and still be legally in the custody of some

officer. They are sometimes held for investigation, as a witness or for any reason which would tend to protect society or the person detained.

A jail is no longer just a prison. It is rather a place also where persons in lawful custody are processed or handled and may be liberated, passed on to other legal entities, detained for a short or long time—So long as the detention thereof is legal.

We hold the proposed building comes within the provisions of amendment No. 17, which authorizes the construction, reconstruction and extension of county jails. The County Court to date has proceeded legally in this matter. The case is affirmed.

Justice McFADDIN thinks this suit is premature.

Justice GEORGE ROSE SMITH dissents.